that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns,

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3014 1/01
06/2016
Page 13 of 15

or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

Signs as "Borrower" solely for the purpose of waiving homestead rights.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3014 1/01
09/2016
Page 14 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____ Seal
ANITA ALLEN

**Acknowledgment**

State of Illinois
County of _____Cook_____

This instrument was acknowledged before me on _October 11, 2016_ by ANITA ALLEN.

_____
Notary Public

_Katherine J. Roche_
(Print Name)

My commission expires: _3-5-2017_

OFFICIAL SEAL
KATHERINE J. ROCHE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-5-2017

Loan Origination Organization: Navy Federal Credit Union
NMLS ID:

Loan Originator: Desiree Sheets
NMLS ID:

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3014 1/01
08/2016
Page 15 of 15

## ATTORNEYS' TITLE GUARANTY FUND, INC.

## LEGAL DESCRIPTION

**Permanent Index Number:**
Property ID

**Property Address:**
17147 Burnham Ave
Lansing, IL 60438

**Legal Description:**
Lot 18 (except the North Half) all of Lot 19 and the North Half of Lot 20 in Block 5 in Overlook Park Addition being a subdivision in the South West Quarter of Section 20 and in the North West Quarter of Section 29, Township 36 North, Range 15, East of the Third Principal Meridian, according to Plat thereof recorded October 29, 1925 as Document 9061716, in Cook County, Illinois.

Subject # ▮▮▮▮
Navy Federal Credit Union
820 Follin Lane SE
Vienna, VA 22180-4907

Prepared by: Trent Boisvert

_____ [Space above this Line for Recording Data] _____

# LIEN MODIFICATION AGREEMENT
(Providing for Bankruptcy Discharged Chapter 7)

This Lien Modification Agreement ("Agreement"), made this **27th** day of **July, 2018** between **ANITA ALLEN** ("Borrower(s)") and **Navy Federal Credit Union** ("Lender"), amends and supplements (1) the Security Instrument, which is dated **October 11th, 2016** and recorded as **Document# 1629904056** among the **Public Records** of **Cook County, Illinois** ("Security Instrument") and (2) the lien bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

**17147 BURNHAM AVE LANSING IL 60438**
(Property Address)

The real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Security Instrument):

1. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

2. As of **September 1st, 2018** the amount payable under the Security Instrument ("the Unpaid Balance") is U.S. $**57,836.66** consisting of the amount(s) loaned to the Borrower by the Lender.

3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest is modified to **4.000%**. The Borrower promises to make monthly payments of principal and interest of U.S. **$276.12** beginning on the **1st day of September, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **August 1st, 2048** ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

5. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void as of the date specified in paragraph number one above:

    a) all terms and provisions of the Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. The attached Addendum is incorporated herein by reference and made a part of hereof as if fully set forth.

_____(Seal)  _____(Seal)
Lender: Navy Federal Credit Union    Borrower: ANITA ALLEN

                                     8-1-2018
                                     Date

By: Janelle Allison  John Carney

8/9/2018  8/9/2018
Date

_____[Space Below This Line For Acknowledgments]_____

State of Indiana          County of Lake

Sworn before me, Anita Allen, a notary public, this 1 day of Aug
ANITA ALLEN personally appeared before me.

Aurora Dawn Edwards
Notary Public

AURORA DAWN EDWARDS
Notary Public - Seal
State of Indiana
Lake County
My Commission Expires Jul 28, 2022

State of VA               County of Fairfax

Sworn before me, Roger Tackie, a notary public, this 9th day of August, 2018, that Janelle Allison personally appeared before me.
John Carney

_____
Notary Public

ROGER TACKIE
NOTARY PUBLIC
REG. #
7680374
COMMISSION
EXPIRES
2/29/2020
COMMONWEALTH OF VIRGINIA

# Addendum

This Addendum to the Lien Modification Agreement between **Navy Federal Credit Union** (Lender) and **ANITA ALLEN** (the Borrower(s)), which is dated **July 27th, 2018** (the Agreement), is made and entered into this **27th** day of **July, 2018** between Navy Federal Credit Union and the Borrower (collectively referred to as the Parties).

Whereas, the Parties now desire and wish to make certain amendments to the Agreement;

Whereas, the Borrower has initiated the discussion and solicited the Lender regarding the security interest and lien that remains on the subject property;

Whereas, the Borrower has initiated the discussion and solicited the Lender regarding a lien modification on property.

Now, therefore, in consideration of the promises and mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

Notwithstanding anything to the contrary contained in the Lien Modification Agreement, the Parties hereto acknowledge the effect of a discharge in bankruptcy that may have been granted to the Borrower prior to the execution hereof and that the Lender may not pursue the Borrower for personal liability. However, the Parties acknowledge that the Lender retains certain rights, including but not limited to the lien against the subject property remaining in effect and the right to foreclose its lien on the subject property under appropriate circumstances. The Parties agree that the consideration for this Addendum include the Lenders forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligation there under. Nothing herein shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability for the discharged debt of the Borrower.

Except as modified herein, the provisions of the Lien Modification Agreement on the mortgage lien dated **October 11th, 2016** shall remain in full force and effect and are hereby ratified and confirmed.

The Parties acknowledge that they have had the opportunity to review this Addendum on their own or to seek legal advice on this matter before signing this Addendum. The Parties agree that there have been no representations to induce either party to execute this Addendum. The Borrower further acknowledges that they understand the benefits of filing bankruptcy and that they may be waiving some of those benefits by entering into this Addendum. The Parties are entering into and signing this Addendum voluntarily and of their own volition.

Navy Federal Credit Union:      Borrower:

By: _Janelle Addison_      _[signature]_
                             **ANITA ALLEN**

_8/9/2018_              _8-1-2018_
Date                       Date

State of _Indiana_      County of _Lake_

On this _1_ day of _Aug_, 20_18_, before me, the undersigned Notary Public, personally appeared **ANITA ALLEN** (Borrower(s)), and executed and acknowledged the Addendum to be their free and voluntary act and deed, and who is personally known to me or who has produced identification and who did take an oath.

_Aurora Dawn Edwards_
Print Name:
Notary Public

Aurora Dawn Edwards
Notary Public - Seal
State of Indiana
Lake County
My Commission Expires Jul 28, 2022

My commission expires:
_7/28/22_